**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-0574-WJM

GILBERTO QUIROZ ZACARIAS,

      Petitioner,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the United States
Department of Homeland Security, *et al*.

      Respondents.

---

## ORDER GRANTING HABEAS CORPUS PETITION

---

Before the Court is Petitioner Gilberto Quiroz Zacarias's Amended Petition for

Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241 ("Amended Petition")

(ECF No. 19).  Respondents Markwayne Mullin, Secretary of the United States

Department of Homeland Security ("DHS"), in his official capacity; Todd Lyons, Acting

Director U.S. Immigration and Customs Enforcement ("ICE"), in his official capacity;

George Valdez, Field Office Director for ICE's Enforcement and Removal Operation's

Field Office, in his official capacity; Sirce Owen, Acting Director of Executive Office for

Immigration Review, in her official capacity; and Juan Baltasar, Warden of the Denver

Contract Detention Facility, in his official capacity (collectively, "Respondents" or "the

Government") filed a response.  (ECF No. 22.)  The Court did not direct Quiroz Zacarias

to file a reply.

Additionally, the Government filed a Supplemental Amendment to its response

(ECF No. 23), which filing was made without first seeking leave of Court to file same, in

contravention of the Court's Revised Practice Standards.  Quiroz Zacarias moved for leave to file a Limited Objection to this unauthorized supplemental filing (ECF No. 24) ("Motion").

For the following reasons, the Amended Petition is granted and the Motion is denied as moot.

## I.    BACKGROUND

This case involves an all-too-familiar fact pattern: Quiroz Zacarias is a 45-year-old citizen of Mexico.  (ECF No. 1 at 6.)  He first arrived in the United States without inspection over twenty years ago, in February 2004, and has lived here since.  (*Id.*)

In October 2025, Quiroz Zacarias was arrested in Florida for driving without a valid license.  (*Id.*)  He was subsequently detained by ICE and transferred to the Denver Contract Detention Facility in Aurora, Colorado.  (*Id.* at 6–7.)  Other than civil traffic violations, Quiroz Zacarias has no relevant criminal history.  (*Id.*)

In February 2026, Quiroz Zacarias filed this habeas corpus action to challenge the legality of his detention.  In March 2026, the Court granted the Petition, finding that Quiroz Zacarias's "detention properly falls under section 1226(a)."  (ECF No. 13 at 7.)  The Court ordered Respondents to provide Quiroz Zacarias with a bond hearing pursuant to 8 U.S.C. § 1226(a), where the "Government shall bear the burden to justify [Petitioner's] continued detention by clear and convincing evidence."  (ECF No. 13 at 8 ("Order").)

The bond hearing occurred before an Immigration Judge ("IJ") on March 20, 2026.  (ECF No. 14.)  The IJ found "that DHS has met its burden to establish that [Petitioner] is both a danger and a flight risk"; accordingly, the IJ denied bond to Quiroz

2

Zacarias.  (ECF No. 14-1 at 1.)  The IJ stated that she "consider[ed] the totality of the

circumstances and all relevant factors" in denying bond.  (*Id.*)  She then alternatively

found that Quiroz Zacarias "has not met his burden to establish that he is neither a

danger to the community nor a significant flight risk such that release from custody is

warranted."  (*Id.*)  Apart from these conclusory statements, however, the IJ's bond order

supplies nothing further.  The below excerpt from her bond order makes that clear:

> The Department of Homeland Security (DHS) concedes jurisdiction based on the federal habeas order issued pursuant to Civil Action No. 26-cv-0574-WJM (District of Colorado).
> The Court has conducted an individualized bond hearing.
> After considering the totality of the circumstances and all relevant factors, the Court denies bond.
> If DHS bears the burden, the Court finds that DHS has met its burden to establish that the respondent is both a danger and a flight risk.
> If the respondent bears the burden, the Court finds that the respondent has not met his burden to establish that he is neither a danger to the community nor a significant flight risk such that release from custody is warranted.
> Accordingly, the Court denies the respondent's request for a change in custody status.

(*Id.*)  That is, the IJ offered no analysis whatsoever in support of her conclusions.

Thereafter, the Government moved, unopposed, to vacate the Court's Order to

the extent it enjoins Respondents from "removing, transferring, or causing the removal

or transfer [of Petitioner] from the District of Colorado until such time as this Court, or

the Tenth Circuit Court of Appeals, vacates this Order."  (ECF No. 15.)  The Court

ordered Quiroz Zacarias to respond to the motion to vacate and to "address how

granting the Motion would be in Petitioner's best interest and in the interest of justice."

(ECF No. 16.)  Quiroz Zacarias responded that, although his counsel had "previously

indicated to government counsel that Petitioner would not oppose the Motion," upon

further consideration, Quiroz Zacarias sought to argue that the bond hearing discussed above did not comply with the Court's Order.  (ECF No. 17.)  The Court denied Respondents' motion to vacate and granted Petitioner leave to file the Amended Petition.  (ECF No. 18.)

Quiroz Zacarias now contends that his bond hearing "did not comply with the substance of the Court's Order or the requirements of the Fifth Amendment."  (ECF No. 19.)  This is so, he argues, because (1) the IJ failed to "meaningfully consider[]" the evidence he presented and relied on "improper and unsupported arguments advanced" by DHS; (2) DHS failed to meet its burden to justify his continued detention; (3) the IJ failed to "properly apply the governing burden framework mandated by this Court"; and (4) the IJ issued a "conclusory" decision that "contains no reasoning or individualized analysis."  (ECF No. 19 at 2, 5, 8.)  As a result of these deficiencies, Quiroz Zacarias submits that the bond hearing violated his substantive and procedural due process rights and failed to comply with the Court's Order.  (*Id.* at 7.)  Accordingly, he seeks immediate release from custody.  (*Id.* at 10.)

On April 14, 2026, the Government filed a Supplemental Amendment, wherein it attaches an order issued by the IJ after its initial bond decision order.  (ECF No. 23.)  That order states, in relevant part, as follows:

> In order to clarify the Court's prior bond order, and to be consistent with the language in the District Court's Order in Civil Action No. 26-cv-0574-WJM, the Court makes the following findings:
> On March 20, 2026, the Court held an individualized bond hearing. At the bond hearing, the Government bore the burden to justify the respondent's continued detention by clear and convincing evidence. The Court finds that the Government met its burden to establish that the respondent is both a danger and a flight risk.
> Accordingly, the Court denies the respondent's request for a change in custody status.

(ECF No. 23-1 at 1.)  In other words, it appears that the IJ abandoned its original alternative ruling regarding Quiroz Zacarias's failure to present evidence on flight risk and danger and instead anchored its decision on the premise that the Government satisfied its burden of showing risks of danger and flight.

Quiroz Zacarias then filed the Motion, seeking leave to file a limited objection to the Supplemental Amendment on the grounds that he should be permitted to respond and that the Court's decision should not be based on the belated Supplemental Amendment.  (ECF No. 24.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III.    ANALYSIS

Quiroz Zacarias contends that the bond hearing he received pursuant to this Court's Order violates his due process rights because the IJ misapplied the legal

standard prescribed by the Court and offered no substantive analysis in her order. The Court agrees.

As a preliminary matter, the Court addresses and rejects the Government's two threshold arguments in opposition to the Motion. First, the Government argues that the Court lacks jurisdiction to review the merits of the IJ's discretionary bond order, "including the IJ's analysis and how the IJ weighed the evidence presented at the bond hearing." (ECF No. 22 at 4.) In support, the Government cites the Immigration and Nationality Act ("INA"), which the Government claims "prohibits review of an IJ's discretionary bond decision by federal district courts." (*Id.*)

The Government is correct that the INA forbids federal district courts from effectively serving as an appellate court over an IJ's bond decision. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under [§ 1226(a)] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole . . . ."). But that is not what the Court is doing by way of this Order. Instead, the Court is assessing whether the IJ applied the legal standard prescribed by this Court and otherwise followed the Court's directives. The Court undisputedly has the authority to enforce its own orders. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[C]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates") (internal citation omitted). This authority derives not "by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

6

Pursuant to this authority, the Court retained jurisdiction to ensure compliance with its original Order granting Quiroz Zacarias a bond hearing pursuant to section 1226. *Chambers*, 501 U.S. at 43. Indeed, the Court directed the Government to file a status report as to the results of the bond hearing. (ECF No. 13.) The Court would not have imposed this reporting requirement if it lacked authority to address noncompliance with its mandate.

For these reasons, the Court concludes that it has jurisdiction to entertain the Amended Petition and to order appropriate relief as warranted.

The Court likewise rejects the Government's argument that relief is unavailable here because Quiroz Zacarias failed to exhaust his administrative remedies by appealing the IJ's bond order to the Board of Immigration Appeals ("BIA"). (ECF No. 22 at 6.) In the immigration context, "exhaustion of remedies is statutorily required only for appeals of final orders of removal." *See Quintana Casillas v. Sessions*, 2017 WL 3088346, at *9 (D. Colo. Jul. 20, 2017) (citing *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir. 2022), *cert. granted and judgment vacated on other grounds sub nom. by Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003)). But here, Quiroz Zacarias challenges the procedures employed by the IJ at his bond hearing, so exhaustion is merely prudential, not mandatory. *See generally Molina Ochoa v. Noem*, 2025 WL 3125846, at *9 (D.N.M. Nov. 7, 2025) (finding that exhaustion was not a bar to consideration of habeas petition challenging denial of a bond hearing). Accordingly, whether to require exhaustion is committed to sound judicial discretion. *L.G. v. Choate*, 744 F.Supp.3d 1172, 1181 (D. Colo. 2024).

The circumstances here clearly require that judicial discretion be exercised to

excuse compliance with the ordinary exhaustion procedures.  The Court previously granted Quiroz Zacarias's habeas petition and ordered that he receive a bond hearing that comported with due process.  As explained below, however, he did not.

Moreover, the Government's suggestion that Quiroz Zacarias can present his due process argument before this Court *after* appealing to the BIA rings hollow.  The BIA typically takes several months to issue decisions on detained noncitizens' appeals.  *See Lopez-Campo v. Raycraft*, 2025 WL 2496379, at *5 (E.D. Mich. Aug. 29, 2025) ("Bond appeals before the BIA, on average, take six months to complete."); *Barrera v. Tindall*, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025) ("[Petitioner] thus faces the possibility of months possibly years under the automatic stay.") (citing *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, *3 (E.D. Mich. Sep. 9, 2025) (stating that the BIA "typically take[s] six months or more" to resolve bond appeals)).

To require Quiroz Zacarias to wait approximately six more months for an administrative appeal "would be inappropriate because it would exacerbate [his] alleged [ ] injury—detention without a bond hearing."  *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, at *6 (W.D. Tex. Sept. 22, 2025); *see also Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025). His individual interest "in immediate judicial review" therefore outweighs the "countervailing institutional interest favoring exhaustion," and the Court will address the merits of his motion.  *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

On the merits, Quiroz Zacarias asserts that, at the bond hearing, he "submitted a comprehensive evidentiary record in support of release, including proof of physical presence, family ties, criminal history, and sponsor documentation."  (ECF No. 19 at 3–

4.)  He acknowledges that Respondents submitted "a Record of Deportable/Inadmissible Alien reflecting prior immigration encounter and minor, nonviolent offenses," but he points out that "neither DHS nor the Immigration Judge relied on this information in any meaningful way to support a finding that [he] posed a danger to the community or a flight risk."  (*Id.* at 4.)  In support of this theory, Quiroz Zacarias observes that the IJ's "decision contains no discussion of this evidence and no explanation of how any facts in the record support continued detention."  (*Id.*)

The Court agrees that the IJ's bond order is plainly deficient on its face.  As reproduced above, the IJ's order is wholly bereft of any analysis whatsoever.  The order merely declares, in a perfunctory and conclusory fashion, that Quiroz Zacarias poses a flight risk and danger to the community regardless of whether he or the Government bears the burden of proof under the clear and convincing standard.  This lack of explanation or reasoning deprives the Court of a meaningful opportunity to review whether the IJ actually applied the standard it prescribed in its Order: the clear and convincing standard to be satisfied *by the Government.*

The Government's Supplemental Amendment does not ameliorate the problem.  Although the IJ purported to clarify that she reached her decision by requiring the Government to bear the burden of proof, that *post-hoc* explanation does not satisfy the Court that the IJ afforded Quiroz Zacarias the due process to which he is entitled.  To reiterate, the IJ supplied no reasoning, oral or otherwise, in support of her bond decision.  Thus, the Court rejects out of hand the Government's assertion that "actual findings were made in accord with the Court's order."  (ECF No. 22 at 7.)  Nothing in the

9

IJ's order backs up such an assertion.[1]  And her after-the-fact order, which is also perfunctory, does not strike the Court as at all credible.

Finally, the Court observes that another Judge in this District has found insufficient a bond order that supplied far more reasoning than what the Court currently has before it.  In *Arredondo*, the court ordered a new bond hearing where the IJ issued a multi-page order but failed to set forth in its ruling "what evidence *presented by respondents* carried their burden of proof to demonstrate that movant is a danger to the community or a flight risk by clear and convincing evidence."  *Arredondo v. Baltazar*, 25-cv-3040-RBJ, ECF No. 26 at 1.  To be sure, the IJ in that case did consider evidence that they found to support denying bond.  But the *Arredondo* court faulted the IJ for failing to regard which "party proffer[ed] the evidence or the order in which it is considered." (*Id.* at 8–9.)  Put simply, if the procedures followed by the IJ in *Arredondo* were deficient—notwithstanding the cited record evidence in support of the decision—surely the procedures followed by the IJ in this case manifestly fail to pass Fifth Amendment muster.

For all these reasons, the Court concludes that the IJ failed to adhere to the burden allocation and analytical evidentiary sequence required by this Court's Order. By so failing, the IJ deprived Quiroz Zacarias of his due process rights.

As to the remedy, the Court has explained elsewhere that "the mounting

---

[1] The Government suggests that the IJ may issue "a formal written decision" in the future, but that such a decision would only come *after* Quiroz Zacarias filed an appeal. (ECF No. 22 at 8.)  The Court does not understand what the Government means.  Although the undersigned is not closely familiar with the procedures followed in the immigration courts, it is basic common sense that a "formal written decision" would need to *precede* an appeal, not *follow* it.  If the inverse were true, what reasoning would an immigrant have to challenge before the BIA?

10

evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026).  This case is yet another example of that unfortunate reality.  Requiring him to undergo yet another sham bond hearing, as the Government would have it, in the Court's view would only add further insult to the constitutional injury to which Petitioner has already been subjected.  This the Court will not do.  Accordingly, the Court will order Quiroz Zacarias's immediate release.

### IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    Quiroz Zacarias's Amended Petition (ECF No. 1) is GRANTED;

2.    The Court GRANTS this relief to Quiroz Zacarias pursuant to Claims 1, 2, and 3 of his Amended Petition.

3.    Given the foregoing discussion, the Motion is DENIED AS MOOT (ECF No. 24), as the Court does not credit the IJ's belated explanation as to which party bore the burden of proof during the bond hearing;

4.    **By no later than <u>this Friday, April 24, 2026</u>,** Respondents shall IMMEDIATELY RELEASE Quiroz Zacarias on his own recognizance, along with all his personal belongings, subject only to the conditions of his pre-existing conditional parole**. No additional conditions of release shall be imposed on Quiroz Zacarias by Respondents**;

5.    Respondents are ENJOINED from re-arresting or re-detaining Quiroz Zacarias unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or

11

danger to the community such that his physical custody is legally justified.  At any such bond hearing, Respondents shall bear the burden of proof, and Quiroz Zacarias shall be allowed to have counsel present.  This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6.      Respondents shall also continue to be ENJOINED from removing or transferring, or causing to remove or transfer, Quiroz Zacarias from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7.      Should Quiroz Zacarias believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **May 20, 2026**.  Respondents shall file a response by no later than **June 10, 2026**, and Singh shall file a reply by no later than **June 24, 2026**; and

8.      Judgment shall enter in Quiroz Zacarias's favor and against Respondents on **May 6, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 22nd day of April, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge